## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| Allied Nevada Gold Corp., *et al.*[1] | ) Case No. 15-10503 (MFW) |
| | ) |
| Debtors. | ) Jointly Administered |
| | ) |
| | ) **Re: Docket Nos. 133 & 223** |

### ORDER (I) AUTHORIZING SELLING DEBTORS' ENTRY INTO THE STALKING HORSE PURCHASE AGREEMENT FOR THE SALE OF THE SELLING DEBTORS' EXPLORATION PROPERTIES AND RELATED ASSETS; (II) APPROVING BIDDING PROCEDURES AND BID PROTECTIONS; (III) SCHEDULING A HEARING TO CONSIDER APPROVAL OF THE SALE OF ASSETS; (IV) APPROVING FORM AND MANNER OF NOTICE OF SALE; AND (V) GRANTING RELATED RELIEF

Upon the motion (the "*Motion*") of the above-captioned debtors and debtors in possession (collectively, the "*Debtors*"), pursuant to sections 105(a), 363, 365, 503 and 507 of title 11 of the United States Code (the "*Bankruptcy Code*"), as supplemented by Rules 2002, 6004, 6006, 9007, and 9014 of the Federal Rules of Bankruptcy Procedure (the "*Bankruptcy Rules*"), for the entry of orders approving, among other things, the sale (the "*Sale*") of the Selling Debtors'[2] Exploration Properties (as defined in the Motion) and related assets, related

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: Allied Nevada Gold Corp. (7115); Allied Nevada Gold Holdings LLC (7115); Allied VGH Inc. (3601); Allied VNC Inc. (3291); ANG Central LLC (7115); ANG Cortez LLC (7115); ANG Eureka LLC (7115); ANG North LLC (7115); ANG Northeast LLC (7115); ANG Pony LLC (7115); Hasbrouck Production Company LLC (3601); Hycroft Resources & Development, Inc. (1989); Victory Exploration Inc. (8144); and Victory Gold Inc. (8139). The corporate headquarters for each of the above Debtors are located at, and the mailing address for each of the above Debtors, except Hycroft Resources & Development, Inc., is 9790 Gateway Drive, Suite 200, Reno, NV 89521. The mailing address for Hycroft Resources & Development, Inc. is P.O. Box 3030, Winnemucca, NV 89446.

[2] The Selling Debtors are Allied Nevada Gold Corp., ANG Eureka LLC, ANG Cortez LLC, ANG Northeast LLC, ANG Pony LLC, ANG Central LLC, Allied Nevada Gold Holdings LLC, ANG North LLC, Allied VNC Inc., Victory Exploration Inc. and Hasbrouck Production Company LLC, each of whom is a Debtor in these cases.

bidding procedures (the "***Bidding Procedures***"),³ which are attached hereto as <u>Schedule 1</u>, and certain protections for the Stalking Horse Bidder (as defined below) of such assets; and the Court having determined that the relief provided herein is in the best interests of the Debtors, their estates, their creditors, and other parties in interest; and due and adequate notice of the Motion having been given under the circumstances; and upon the record of the hearing on the Motion, and the full record of these cases; and after due deliberation thereon; and good and sufficient cause appearing therefor, it is hereby

**FOUND AND DETERMINED THAT:**

 A. Findings of fact shall be construed as conclusions of law, and conclusions of law shall be construed as findings of fact when applicable. *See* Bankruptcy Rule 7052.

 B. This Court has jurisdiction over the Motion and the transactions contemplated by the Stalking Horse Purchase Agreement (as defined below) pursuant to 28 U.S.C. §§ 157 and 1334, and this matter is a core proceeding pursuant to 28 U.S.C. §§ 157(b)(2)(A), (M), and (O). Venue in this District is proper under 28 U.S.C. §§ 1408 and 1409.

 C. Good and sufficient notice of the Motion and the relief sought therein has been given under the circumstances, and no other or further notice is required except as set forth herein with respect to the Auction and the Sale Hearing. Subject to the immediately preceding sentence, a reasonable opportunity to object or to be heard regarding the relief provided herein has been afforded to all parties in interest in these chapter 11 cases.

 D. The notice procedures set forth herein are appropriate and reasonably calculated to provide all interested parties with timely and proper notice of (i) the proposed Sale of the Selling Debtors' Exploration Properties and related assets (as more fully described in the

---

³ Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Bidding Procedures.

Stalking Horse Purchase Agreement, the "*Acquired Assets*") pursuant to the Stalking Horse Purchase Agreement, (ii) the Bidding Procedures to be employed in connection with the Auction, (iii) the Auction, and (iv) the Sale Hearing.

E. Good and sufficient business reasons exist for this Court to authorize the Selling Debtors to enter into that certain Asset Purchase Agreement (the "*Stalking Horse Purchase Agreement*"), by and among the Selling Debtors and Clover Nevada LLC, as Buyer (the "*Stalking Horse Bidder*"), substantially in the form appended to the Motion as Exhibit C.

F. Good and sufficient business reasons exist for this Court to approve (i) the Bidding Procedures substantially in the form attached hereto as Schedule 1, (ii) the payment to the Stalking Horse Bidder of the Break-Up Fee and the Expense Reimbursement (each as defined in the Stalking Horse Purchase Agreement), if necessary, in accordance with the terms of the Stalking Horse Purchase Agreement and this Order; (iii) the scheduling of the Bid Deadline, the Auction, and the Sale Hearing with respect to the proposed Sale; and (iv) the establishment of procedures to fix cure amounts to be paid pursuant to section 365 of the Bankruptcy Code in connection with the assumption, assignment, and/or transfer of the Assigned Contracts and Assigned Leases (as defined below) to the Successful Bidder.

G. As discussed at the hearing on April 21, 2015, the terms of the Stalking Horse Purchase Agreement relating to the Deposit (as defined therein), the Break-Up Fee and Expense Reimbursement, including the circumstances requiring payment thereof, and the Bidding Procedures were negotiated in good faith and at arm's length.

H. The Bidding Procedures are reasonably designed to maximize the value to be achieved for the Acquired Assets.

I.     The Debtors have demonstrated that the Break-Up Fee and the Expense Reimbursement are actual and necessary costs and expenses of preserving the Debtors' estates within the meaning of section 503(b) of the Bankruptcy Code and are of substantial benefit to the Debtors' estates by inducing the Stalking Horse Bidder's bid, which has established a bid standard or minimum for other potential bidders for the Acquired Assets, thereby ensuring that the Debtors receive the highest and best possible bid for the Acquired Assets during the Auction, if any.

J.     The Notice of Auction and Sale Hearing (as defined below) is reasonably calculated to provide all interested parties with timely and proper notice of the proposed Sale of the Acquired Assets, including, without limitation: (i) the date, time, and place of the Auction, if any; (ii) the Bidding Procedures and the dates and deadlines related thereto; (iii) the Sale Objection Deadline (as defined below) and the date, time, and place of the Sale Hearing; (iv) reasonably specific identification of the Acquired Assets; (v) instructions for promptly obtaining a copy of the Stalking Horse Purchase Agreement; (vi) representations describing the Sale as being free and clear of any and all liens, claims, interests, and other encumbrances other than the Assumed Liabilities, with all such liens, claims, interests, and other encumbrances attaching with the same validity and priority to the proceeds of the Sale; (vii) the commitment by the Stalking Horse Bidder to assume certain liabilities of the Debtors; and (viii) notice of the proposed assumption and assignment of certain contracts and leases to the Stalking Horse Bidder pursuant to the Stalking Horse Purchase Agreement (or to another Successful Bidder at the conclusion of the Auction, if any), the proposed Cure Amounts (as defined below) relating thereto, and the procedures and deadlines for objecting thereto, and no further notice of the Sale shall be required.

K.  Entry of this Order is in the best interests of the Debtors, their estates, their creditors, and other parties in interest.

**NOW THEREFORE, IT IS HEREBY ORDERED, ADJUDGED AND DECREED THAT:**

1. The Motion is granted as set forth herein.

2. All objections to the Motion or to the relief provided herein that have not been withdrawn, waived or settled, and all reservations of rights included therein with respect to the Debtors' entry into the Stalking Horse Purchase Agreement and the approval of the Bidding Procedures, are hereby overruled and denied on the merits; provided, however, that any objection or reservation of rights filed by the Equity Committee and WK Mining (USA) other than with respect to the approval of the Bidding Procedures, the Break-Up Fee and the Expense Reimbursement are reserved for determination by the Court at the Sale Hearing.

3. The Selling Debtors' entry into the Stalking Horse Purchase Agreement is hereby approved.

4. The Stalking Horse Bidder shall constitute a Qualified Bidder for all purposes and in all respects under the Bidding Procedures.

5. The Bidding Procedures, substantially in the form attached hereto as Schedule 1, are incorporated herein, are approved and shall apply with respect to the Sale of the Acquired Assets. The Debtors are authorized to take any and all actions necessary or appropriate to implement the Bidding Procedures.

6. ***Bid Deadline.*** As further described in the Bidding Procedures, the deadline for submitting bids for the Acquired Assets (the "***Bid Deadline***") is June 12, 2015 at 5:00 p.m. (prevailing Eastern Time). No bid shall be deemed to be a Qualified Bid unless such bid meets the requirements set forth in the Bidding Procedures.

7.     *Auction*.  The Selling Debtors may sell the Acquired Assets by conducting the Auction in accordance with the Bidding Procedures.  If the Debtors timely receive one or more Qualified Bids (other than the bid of the Stalking Horse Bidder) in accordance with the Bidding Procedures, then the Auction shall take place on June 16, 2015 at 10:00 a.m. (prevailing Eastern Time) at the offices of Akin Gump Strauss Hauer & Feld LLP, co-counsel to the Debtors, at One Bryant Park, New York, NY 10036, or at such other location as the Debtors may hereafter designate (with notice of such alternate location given to (t) all Qualified Bidders under the Bidding Procedures, (u) counsel to the Official Committee of Unsecured Creditors (the "*Committee*"), (v) counsel to the Official Committee of Equity Security Holders (the "*Equity Committee*"), (w) counsel to the DIP Agent, DIP Lenders and Noteholder Ad Hoc Group (each as defined in the Motion), (x) counsel to the Prepetition Secured Lenders (as defined in the Motion) (collectively, u-x, the "*Consultation Parties*"), (y) filed with the Court and (z) posted to the case website maintained by the Debtors' claims and noticing agent, Prime Clerk LLC, https://cases.primeclerk.com/alliednevadagold/).  Each Qualified Bidder participating at the Auction, if any, shall be required to confirm that it has not engaged in any collusion with respect to the bidding or the Sale.

8.     If no other Qualified Bid is received by the Bid Deadline (other than the Stalking Horse Bid), then the Auction shall not be held, and the Debtors shall promptly seek this Court's approval of the Sale of the Acquired Assets to the Stalking Horse Bidder in accordance with the terms of the Stalking Horse Purchase Agreement.

9.     On the same date that the Debtors, after consultation with the Consultation Parties, determine the Successful Bid, the Debtors shall file on this Court's docket in these

chapter 11 cases a notice disclosing the identity of the Successful Bidder, and, if the Debtors deem there to be one, the identity of the Back-Up Bidder (the "***Successful Bidder Notice***").

10. ***Sale Hearing***. The Sale Hearing shall be held on June 18, 2015 at 10:30 a.m. (prevailing Eastern Time) before the Honorable Mary F. Walrath, United States Bankruptcy Judge for the District of Delaware, at 824 North Market Street, 5th Floor, Wilmington, Delaware 19801. At the Sale Hearing, the Debtors shall seek entry of an order of this Court approving and authorizing the Sale of the Acquired Assets to the Successful Bidder. Any obligations of the Selling Debtors set forth in the Stalking Horse Purchase Agreement that are intended to be performed prior to the Sale Hearing and/or entry of the Sale Order pursuant to the Stalking Horse Purchase Agreement are authorized as set forth herein and shall be fully enforceable as of the date of entry of this Order. The Sale Hearing (or any portion thereof) may be adjourned by this Court or by the Debtors (after consultation with the Stalking Horse Bidder or any other Successful Bidder and with the Consultation Parties) from time to time without further notice other than by announcement in open court or through the filing of a notice on this Court's docket.

11. ***Sale Objection Deadline***. The deadline to object to the remaining relief requested in the Motion, including the entry of the proposed Sale Order (the "***Sale Objection Deadline***"), is (a) June 11, 2015 at 4:00 p.m. (prevailing Eastern Time) if the Stalking Horse Bidder is the Successful Bidder or (b) the Sale Hearing if the Stalking Horse Bidder is not the Successful Bidder, <u>provided, however</u> that any Objection filed after June 11, 2015 at 4:00 p.m. must relate solely to the identity of the Successful Bidder and its ability to provide adequate assurance of future performance. Objections, if any, <u>*must*</u>: (i) be in writing; (ii) conform to the applicable provisions of the Bankruptcy Code, Bankruptcy Rules, and the Local Rules; (iii) state with

particularity the legal and factual basis for the objection and the specific grounds therefor; and (iv) be filed with this Court and served so as to be _actually received_ no later than the Sale Objection Deadline by the following parties (collectively, the "*Notice Parties*"): (a) co-counsel to the Debtors, (i) Akin Gump Strauss Hauer & Feld LLP, One Bryant Park, New York, NY 10036 (Attn: Philip C. Dublin, Esq. and Alexis Freeman, Esq.), Fax No. (212) 872-1002 and (ii) Blank Rome LLP, 1201 North Market Street, Suite 800, Wilmington, DE 19801 (Attn: Stanley B. Tarr, Esq.), Fax No. (302) 425-6464; (b) co-counsel to the Stalking Horse Bidder, Sidley Austin LLP, One South Dearborn Street, Chicago, IL 60603 (Attn: Jessica C.K. Boelter, Esq.), Fax No. (312) 853-7036 (c) co-counsel to the DIP Lenders, DIP Agent and Noteholder Ad Hoc Group, (i) Stroock & Stroock & Lavan LLP, 180 Maiden Lane, New York, NY 10038 (Attn: Jayme T. Goldstein, Esq.), Fax No. (212) 806-6006 and (ii) Young Conaway Stargatt & Taylor, LLP, Rodney Square, 1000 North King Street, Wilmington, DE 19801 (Attn: Matthew B. Lunn, Esq.), Fax No. (302) 576-3312 ; (d) co-counsel to the Committee, (i) Arent Fox LLP, 1675 Broadway, New York, NY 10019 (Attn: Robert M. Hirsh, Esq.), Fax No. (212) 484-3990 and (ii) Polsinelli PC, 222 Delaware Ave., Ste. 1101, Wilmington, DE 19801 (Attn: Christopher A. Ward, Esq.), Fax No. (302) 252-0921; (e) co-counsel to The Bank of Nova Scotia, (i) Wachtell, Lipton, Rosen & Katz, 51 West 52nd Street, New York, NY 10019 (Attn: Richard Mason), Fax No. (212) 403-2340 and (ii) Morris, Nichols, Arsht & Tunnell LLP, 1201 N. Market Street, 16th Floor, Wilmington, DE 19801 (Attn: Derek C. Abbott), Fax No. (302) 425-4664; and (f) counsel to Wells Fargo Bank, National Association, Paul Hastings LLP, 75 East 55th Street, New York, NY 10022 (Attn: Andrew V. Tenzer), Fax No. (212) 230-7699.

12.    No later than three (3) business days after entry of this Order, the Debtors shall cause a notice substantially in the form attached hereto as Schedule 2 (the "*Notice of Auction*

*and Sale Hearing*") and a copy of this Order to be sent by first-class mail postage prepaid, to the following persons or entities: (a) all entities that assert any lien, claim or interest in the Acquired Assets; (b) all parties to the Selling Debtors' Executory Contracts and Unexpired Leases (as defined below); (c) all governmental taxing authorities that have or as a result of the Sale of the Acquired Assets may have claims, contingent or otherwise, against the Debtors; (d) all federal, state and local taxing authorities having jurisdiction over any of the Acquired Assets, including the Internal Revenue Service; (e) all state and local governmental agencies and environmental agencies in any jurisdiction where the Debtors own or have owned or used real property; (f) the Environmental Protection Agency; (g) all parties that have filed requests for notices in these chapter 11 cases; (h) all known creditors (whether liquidated, contingent or unmatured) of the Debtors; (i) all interested governmental, pension, environmental and other regulatory entities; (j) the Office of the Attorney General of Nevada; (k) the Office of the Attorney General of Delaware; (l) any other applicable state attorneys general; (m) the Office of the United States Trustee for the District of Delaware; (n) the United States Department of Justice; (o) all entities that, within the twelve months prior to the Petition Date, expressed to the Debtors an interest in purchasing all or a substantial portion of the Acquired Assets; and (p) counsel to the Stalking Horse Bidder and all other notice parties requested by the Stalking Horse Bidder.  In addition to the foregoing, (i) electronic notification of the Motion, this Order, and the Notice of Auction and Sale Hearing will also be posted on (A) the Court's website, https://ecf.deb.uscourts.gov/ and (B) the case website maintained by the Debtors' claims and noticing agent, Prime Clerk LLC https://cases.primeclerk.com/alliednevadagold/; and (ii) no later than three (3) business days after entry of this Order, the Debtors will, subject to applicable submission deadlines, publish the Notice of Auction and Sale Hearing in *The Wall Street Journal (National Edition)*, *The Globe*

*and Mail*, and *The Mining Journal*. **Failure to timely file an objection in accordance with this Order may forever bar the assertion of any objection to the Motion, entry of the Sale Order, and/or consummation of the Sale, and may be deemed to constitute consent to entry of the Sale Order and consummation of the Sale and all transactions related thereto.**

13. No later than three (3) business days after entry of this Order (the "*Cure Notice Deadline*"), the Debtors shall serve by first-class mail postage prepaid, a notice of potential assumption, assignment, and/or transfer of the executory contracts and unexpired leases to which any Selling Debtor is a party (collectively, the "*Executory Contracts and Unexpired Leases*"), substantially in the form attached hereto as Schedule 3 (the "*Notice of Potential Assumption and Assignment*"), on all non-Debtor parties to the Executory Contracts and Unexpired Leases. The Notice of Potential Assumption and Assignment shall include the cure amounts (the "*Cure Amounts*") that the Debtors believe must be paid to cure all defaults outstanding under the Executory Contracts and Unexpired Leases as of such date.

14. Unless the non-Debtor party to an Executory Contract or Unexpired Lease files an objection to (a) its Cure Amount and/or (b) the proposed assumption, assignment and/or transfer of such Executory Contract or Unexpired Lease (including the transfer of any rights or benefits thereunder) to the Stalking Horse Bidder or to any other Successful Bidder, as applicable (each such objection, a "*Cure Amount/Assignment Objection*"), by May 21, 2015 at 4:00 p.m. (prevailing Eastern Time) or, to the extent that the Stalking Horse Bidder is not the Successful Bidder, by the Sale Hearing (as applicable, the *Cure Amount/Assignment Objection Deadline*") and serves a copy of the Cure Amount/Assignment Objection so as to be <u>*actually received*</u> by the Notice Parties by no later than the Cure Amount/Assignment Objection Deadline, such non-Debtor party shall (x) be forever barred from objecting to the Cure Amount and from asserting

against the Debtors or the Stalking Horse Bidder (or any other Successful Bidder) any additional cure or other amounts with respect to such Executory Contract or Unexpired Lease in the event that such Executory Contract or Unexpired Lease is ultimately assumed and/or assigned by the Debtors, and the Debtors and the Stalking Horse Bidder (or any other Successful Bidder) shall be entitled to rely solely upon the Cure Amount, and (y) be deemed to have consented to the assumption, assignment and/or transfer of such Executory Contract or Unexpired Lease (including the transfer of any rights and benefits thereunder) to the Stalking Horse Bidder, any other Successful Bidder, or any other assignee of the relevant Executory Contract or Unexpired Lease, and shall be forever barred and estopped from asserting or claiming against the Debtors, the Stalking Horse Bidder, any other Successful Bidder, or any other assignee of the relevant Executory Contract or Unexpired Lease that any additional amounts are due or defaults exist, or conditions to assumption, assignment and/or transfer must be satisfied under such Executory Contract or Unexpired Lease, or that any right or benefit under such Executory Contract or Unexpired Lease cannot or will not be available to the Stalking Horse Bidder, any other Successful Bidder, or any other assignee of the relevant Executory Contract or Unexpired Lease. All timely filed Cure Amount/Assignment Objections shall be heard at the Sale Hearing unless the Debtors, in consultation with the Stalking Horse Bidder or any other Successful Bidder, agree otherwise or the Court orders otherwise. With respect to any party that has timely filed a Cure Amount/Assignment Objection in accordance with this Order, nothing in this Order and/or the Notice of Potential Assumption and Assignment shall (i) operate to waive or impair any rights, claims, or defenses of any non-Debtor party to any Executory Contract or Unexpired Lease or (ii) be deemed to be a determination, finding, or adjudication that any Executory Contract or Unexpired Lease, or any rights or benefits thereunder, are or may be assumed, assigned,

transferred, delegated, or otherwise made available for the benefit of any entity, pursuant to section 365 of the Bankruptcy Code or otherwise, without the consent of the non-Debtor counterparty to such Executory Contract or Unexpired Lease.

15. Within one (1) business day after the conclusion of the Auction, if any, the Debtors shall serve the Successful Bidder Notice on all parties that received service of the Notice of Potential Assumption and Assignment, which notice shall be faxed, emailed or (if neither is available) sent by overnight mail to all parties to Executory Contracts or Unexpired Leases.

16. As soon as practicable after entry of a Sale Order, prior to the Closing (as defined in the Stalking Horse Purchase Agreement or in any Successful Bid) (the "***Assignment Notice Deadline***"), the Debtors shall serve a notice, substantially in the form attached hereto as Schedule 4 (the "*Assignment Notice*"), identifying the Executory Contracts and Unexpired Leases that will be assumed and assigned to the Successful Bidder as of the Closing (collectively, the "***Assigned Contracts and Assigned Leases***").

17. The Successful Bidder may determine to exclude any Executory Contract or Unexpired Lease (each an "*Excluded Contract*") from the list of Acquired Assets in accordance with the applicable asset purchase agreement. The Debtors shall notify the non-Debtor party or parties to any Excluded Contract of such exclusion by written notice as soon as practicable after such determination, which may be after the Sale Hearing.

18. The Notice of the Auction and Sale Hearing, the Notice of Potential Assumption and Assignment, and the Assignment Notice, substantially in the forms attached hereto as Schedule 2, Schedule 3, and Schedule 4, respectively, are hereby approved.

19. The Sale Hearing may be adjourned, from time to time, in accordance with the Bidding Procedures and without further notice to creditors or other parties in interest other than by announcement in open court or through the filing of a notice on this Court's docket.

20. The Break-Up Fee and the Expense Reimbursement, as set forth in the Stalking Horse Purchase Agreement, are hereby approved, and the Selling Debtors are authorized and directed to promptly pay, as they become due, any amounts owed to the Stalking Horse Bidder on account of such Break-Up Fee and Expense Reimbursement in accordance with the Stalking Horse Purchase Agreement. The obligations of the Selling Debtors to pay the Break-Up Fee and the Expense Reimbursement (i) shall constitute administrative expense claims against each of the Selling Debtors' estates; (ii) shall be entitled to administrative expense priority status under sections 503(b)(1)(A) and 507(a)(2) of the Bankruptcy Code; (iii) shall survive the termination of the Stalking Horse Purchase Agreement; and (iv) shall be paid by the Selling Debtors to the Stalking Horse Bidder in cash upon certain terminations of the Stalking Horse Purchase Agreement as set forth in Section 6.9(a)(i) thereof. No subsequent order of the Court may modify the requirement that such Break-Up Fee and Expense Reimbursement be paid pursuant to the terms of this Order.

21. Except as otherwise provided in the Stalking Horse Purchase Agreement, the Bidding Procedures, or this Order, the Debtors reserve their rights as they may reasonably determine, after consultation with the Consultation Parties, to: (a) determine which Potential Bidders are Qualified Bidders; (b) determine which bids are Qualified Bids; (c) determine which Qualified Bid is the highest and best offer for the Acquired Assets and which Qualified Bid is the second-highest and best offer; (d) reject any bid that is (i) inadequate or insufficient, (ii) not in conformity with the requirements of the Bidding Procedures or the requirements of the

Bankruptcy Code, or (iii) contrary to the best interests of the Debtors and their estates; (e) waive terms and conditions set forth in the Bidding Procedures with respect to all Potential Bidders (after consultation with the Stalking Horse Bidder); (f) impose additional terms and conditions with respect to all Potential Bidders (after consultation with the Stalking Horse Bidder); (g) extend the deadlines set forth in the Bidding Procedures (after consultation with the Stalking Horse Bidder); (h) adjourn or cancel the Auction and/or Sale Hearing without further notice; and (i) modify the Bidding Procedures as they may determine to be in the best interests of their estates or to withdraw the Motion at any time with or without prejudice; *provided, however*, that notwithstanding the foregoing, without the consent of the Stalking Horse Bidder, which consent shall not be unreasonably withheld, the Debtors may not (1) withdraw the Motion; (2) adjourn or cancel the Sale Hearing; (3) waive any conditions to a bidder being a Qualified Bidder or a bid being a Qualified Bid; (4) remove any of the Acquired Assets from the Auction; (5) extend the time period within which the Debtors are required to file the Successful Bidder Notice; or (6) modify the Bidding Procedures' requirements (A) set forth in Section VIII(a) therein, (B) to change the amount of the Deposit, (C) to waive or modify any of the provisions in the Credit Bidding section of the Bidding Procedures, or (D) to impair or modify the Stalking Horse Bidder's rights and obligations under the Bidding Procedures or the Stalking Horse Purchase Agreement, including, without limitation, the Stalking Horse Bidder's rights with respect to the timing of the Auction and the Sale Hearing or the Stalking Horse Bidder's right to receive a "credit" in the amount of its Break-Up Fee and Expense Reimbursement toward any Subsequent Bid at the Auction; *provided, further, however*, that all rights of all parties in interest to object to, or otherwise challenge, the decisions of the Debtors with respect to the Bidding Process are hereby reserved.

22. The stays provided for in Bankruptcy Rules 6004(h) and 6006(d) and the requirements of Local Rule 6004-1(c)(2) are hereby waived, and this Order shall be effective immediately upon its entry.

23. This Court shall retain jurisdiction over any matters related to or arising from the interpretation or implementation of this Order.


Dated: April 24, 2015
Wilmington, Delaware

_____
The Honorable Mary F. Walrath
United States Bankruptcy Judge