## **SCHEDULE 1**

BIDDING PROCEDURES

# BIDDING PROCEDURES

On March 10, 2015 (the "*Petition Date*"), Allied Nevada Gold Corp. and its affiliated debtors and debtors in possession (collectively, the "*Debtors*") each filed voluntary petitions for relief under title 11 of the United States Code (the "*Bankruptcy Code*") in the United States Bankruptcy Court for the District of Delaware (the "*Bankruptcy Court*"). By a motion dated March 31, 2015 (the "*Motion*"), the Debtors sought, among other things, approval of the procedures related to the proposed sale of the Acquired Assets (as defined in the Stalking Horse Purchase Agreement (as defined below)). On [   ], 2015, the Bankruptcy Court entered an order (the "*Bidding Procedures Order*") authorizing the Debtors to market the Acquired Assets through, among other means, the bidding procedures described below (the "*Bidding Procedures*"). As part of the Bidding Procedures, the Bankruptcy Court has scheduled a hearing to consider approval of the sale of the Acquired Assets to the Successful Bidder (as defined below), to be held on June 18, 2015 at 10:30 a.m. (prevailing Eastern Time), at the Bankruptcy Court before the Honorable Mary F. Walrath (the "*Sale Hearing*"). Please note that all capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Stalking Horse Purchase Agreement.

I.  **Stalking Horse Bid**

The Selling Debtors have executed an Asset Purchase Agreement (collectively with all ancillary documents and agreements, the "*Stalking Horse Purchase Agreement*") with Clover Nevada LLC, as Buyer (the "*Stalking Horse Bidder*"), dated as of [   ], 2015, which contemplates a set of related transactions (collectively, the "*Sale Transaction*") providing for the sale of the Acquired Assets to the Stalking Horse Bidder in consideration for the Purchase Price (as defined in the Stalking Horse Purchase Agreement) and the assumption of the Assumed Liabilities, all in accordance with the terms and subject to the conditions set forth in the Stalking Horse Purchase Agreement.

II. **Important Dates for Potential Competing Bidders**

These Bidding Procedures provide an opportunity for interested parties to qualify for and participate in the Auction (as defined below) and to submit competing bids for the Acquired Assets. The Debtors shall:

(a) accept bids until the Bid Deadline (as defined below); and

(b) assist Potential Bidders (as defined below) in conducting their respective due diligence investigations until the Bid Deadline and, on June 16, 2015, conduct an auction (the "*Auction*"), provided that the Debtors receive more than one Qualified Bid, to identify the Successful Bid (each as defined below).

The chart below summarizes key dates with respect to these Bidding Procedures:

| Deadline/Event | Date |
|---|---|
| Cure Notice Deadline | 3 Business Days after entry of Bidding Procedures Order |

| Cure Amount/Assignment Objection Deadline | May 21, 2015 at 4:00 p.m. or, if the Stalking Horse Bidder is not the Successful Bidder, the Sale Hearing |
|---|---|
| Sale Objection Deadline | June 11, 2015 or, if the Stalking Horse Bidder is not the Successful Bidder, the Sale Hearing |
| Bid Deadline | June 12, 2015 at 5:00 p.m. (prevailing Eastern Time) |
| Auction | June 16, 2015 at 10:00 a.m. (prevailing Eastern Time) |

### III. Assets to be Sold

The Selling Debtors seek to sell the "Acquired Assets" as set forth in Section 2.1 of the Stalking Horse Purchase Agreement, to the maximum extent permitted by section 363 of the Bankruptcy Code, including such Assigned Contracts and Assigned Leases (as such terms are defined in the Bidding Procedures Order). Any Qualified Bidder may seek to purchase the Acquired Assets at the Auction, free and clear of any and all Claims (as defined below) but subject to certain conditions and subject to Permitted Liens and Assumed Liabilities (as such terms are defined in the Stalking Horse Purchase Agreement).

### IV. The Bidding Process

The Debtors shall: (a) coordinate the efforts of Potential Bidders in conducting their respective due diligence investigations with respect to the Acquired Assets; (b) determine whether any person or entity is a Qualified Bidder; (c) receive and evaluate bids from Qualified Bidders; and (d) administer the Auction. The foregoing activities are collectively referred to as the "*Bidding Process.*" Neither the Debtors nor their representatives shall be obligated to furnish information of any kind whatsoever to any person or entity that is not a Potential Bidder (or legal counsel or financial advisor to a Potential Bidder), and the Debtors and their representatives shall use good faith efforts to provide substantially similar access and information to all Potential Bidders. Except as set forth in the Bidding Procedures Order and herein, the Debtors may conduct the Bidding Process in their sole discretion, after consultation with the Consultation Parties (as defined in the Bidding Procedures Order); *provided, however*, that all rights of all parties in interest to object to, or otherwise challenge, the decisions of the Debtors with respect to the Bidding Process are hereby reserved.

Any person or entity that wishes to participate in the Bidding Process must meet the participation requirements for Potential Bidders set forth below and must timely submit a Qualified Bid in order to become a Qualified Bidder that can participate in the Auction.

### V. Participation Requirements

To participate in the Bidding Process, each interested person or entity must deliver the following documents (collectively, the "*Participation Materials*") to the parties set forth below at least two (2) calendar days before the Bid Deadline:

2

(a) an executed confidentiality agreement in form and substance satisfactory to the Debtors;

(b) a statement demonstrating to the Debtors' satisfaction a *bona fide* interest in purchasing the Acquired Assets from the Debtors; and

(c) information satisfactory to the Debtors demonstrating that the Potential Bidder has the financial wherewithal to satisfy the adequate assurance requirements of the Bankruptcy Code with respect to the Assigned Contracts and Assigned Leases, and to consummate the Sale Transaction.

The Stalking Horse Bidder shall not be required to provide any of the materials referenced above.

The Participation Materials must be timely transmitted to each of the following parties (collectively, the "*Notice Parties*"): (a) the Debtors, c/o Allied Nevada Gold Corp., 9790 Gateway Drive, Suite 200, Reno, NV 89521 (Attn: Stephen M. Jones, steve.jones@alliednevada.com), Fax No. (775) 358-4458; (b) co-counsel to the Debtors, (i) Akin Gump Strauss Hauer & Feld LLP, One Bryant Park, New York, NY 10036 (Attn: Philip C. Dublin, Esq., pdublin@akingump.com, Daniel I. Fisher, Esq., dfisher@akingump.com, and Alexis Freeman, Esq., afreeman@akingump.com), Fax No. (212) 872-1002, and (ii) Blank Rome LLP, 1201 North Market Street, Suite 800, Wilmington, DE 19801 (Attn: Stanley B. Tarr, Esq., tarr@blankrome.com), Fax No. (302) 428-5104; and (c) financial advisors to the Debtors, Moelis & Company LLC, 399 Park Avenue #5, New York, NY 10022 (Attn: Barak Klein, barak.klein@moelis.com), Fax No. (212) 880-4260.

Any party that timely delivers the Participation Materials to the Notice Parties may be a "*Potential Bidder*," and by timely delivering the Participation Materials to the Notice Parties each Potential Bidder acknowledges that its identity shall be made public, including in the Debtors' filings with the Bankruptcy Court. If the Debtors, after consultation with the Consultation Parties, determine that a Potential Bidder has a *bona fide* interest in the Acquired Assets, then the Debtors shall, promptly after such determination, (a) deliver to the Potential Bidder an electronic copy of the Stalking Horse Purchase Agreement and (b) provide to the Potential Bidder access information for a confidential electronic data room concerning the Acquired Assets (the "*Data Room*").

No Potential Bidder shall consult with any other Potential Bidder following delivery of the Participation Materials and before the conclusion of the Auction, or submit at any time a "joint bid" with any other Potential Bidder, without the written consent of the Debtors.

VI. **Due Diligence**

Until the Bid Deadline, the Debtors will afford any Potential Bidder such due diligence access or additional information as may be reasonably requested by the Potential Bidder and that the Debtors determine in their discretion to be reasonable and appropriate under the circumstances. All due diligence requests shall be directed to the financial advisors to the Debtors, as indicated above. The Debtors shall coordinate all reasonable requests for additional information and due diligence access from Potential Bidders. If the Debtors determine that due

diligence material requested by a Potential Bidder is reasonable and appropriate under the circumstances, but such material has not previously been provided to any other Potential Bidder or to the Stalking Horse Bidder, then the Debtors shall post such materials in the Data Room and provide e-mail notice of such posting to all Potential Bidders and to the Stalking Horse Bidder.

Except as provided above with respect to the copy of the Stalking Horse Purchase Agreement provided by the Debtors to the Potential Bidders, and information in the Data Room, neither the Debtors nor their representatives shall be obligated to furnish any information of any kind whatsoever relating to the Acquired Assets to any party.

## VII. Bid Deadline

A Potential Bidder that desires to submit a bid for the Acquired Assets shall deliver written and electronic copies of its bid to the Notice Parties so as to be received by them not later than 5:00 p.m. (prevailing Eastern Time) on June 12, 2015 (the "*Bid Deadline*"). Any bids submitted by a Potential Bidder must comply with the requirements set forth below.

## VIII. Bid Requirements

To participate in the Auction, if any, a bidder must deliver to the Notice Parties a written offer, which, to be deemed a "Qualified Bid," must, at a minimum, provide for or otherwise comply with the following requirements:

(a) The bid may be a bulk bid to purchase all of the assets constituting the Acquired Assets from the Selling Debtors or a bid to purchase individual Exploration Properties from the Selling Debtors, at the purchase price and upon the terms and conditions set forth in an executed purchase agreement, a clean copy of which shall be submitted, together with a marked copy showing any proposed changes to the Stalking Horse Purchase Agreement; *provided, however*, that any bid for less than all of the Exploration Properties will not be considered a "Qualified Bid" unless (i) the purchase price set forth in such bid exceeds the threshold set forth in Section VIII(c) below, or (ii) the Debtors receive multiple bids for less than all of the Exploration Properties (any such bid being a "*Partial Bid*") and any such bid can be combined with other Partial Bids for the Exploration Properties without overlap in the properties being purchased under each of the Partial Bids and when so combined the aggregate bids exceed the threshold set forth in Section VIII(c) below. For the avoidance of doubt, each Qualified Bidder participating at the Auction, including Qualified Bidders whose bids have been combined with other bids as set forth herein, shall be required to confirm that it has not engaged in any collusion with respect to the bidding or the Sale.

(b) The bid must not be subject to any due diligence or financing contingency, must not be conditioned on bid protections or any expense reimbursement, must not be subject to any corporate (board, shareholder, or similar) consent or approval, or any regulatory contingencies (other than a condition that any applicable waiting period required for any regulatory approval shall have expired or have been terminated and required authorization of any other governmental entity whose

4

approval is identified in the bid as required for the transaction as set forth in such Potential Bidder's bid shall have been obtained, and any other regulatory contingencies set forth in the Stalking Horse Purchase Agreement have been satisfied). Any required governmental approvals identified in the bid may impact the evaluation of whether the bid is a Qualified Bid and shall be taken into account in the Debtors' determination of the highest and best bid for the Acquired Assets.

(c) The purchase price in such bid must be a higher and better offer as compared to the offer of the Stalking Horse Bidder. Such offer shall not be considered a Qualified Bid unless such bid provides for (i) consideration equal to the Purchase Price in the Stalking Horse Purchase Agreement, including an amount of cash equal to the Cash Consideration in the Stalking Horse Purchase Agreement, plus (ii) an amount of cash equal to the Break-Up Fee; plus (iii) an amount of cash equal to the Expense Reimbursement; plus (iv) an amount of cash equal to $250,000.

(d) The Debtors must receive the bid by the Bid Deadline.

(e) The bid must not entitle the Potential Bidder to any break-up fee, termination fee, or similar type of payment or reimbursement and, by submitting a bid, the Potential Bidder waives the right to pursue a substantial contribution claim under 11 U.S.C. § 503 related in any way to the submission of its bid or the Bidding Process.

(f) The bid must be accompanied by a cash deposit in the amount of ten percent (10%) of the purchase price of the bid (the "***Deposit***").

(g) The bid must include a comprehensive list of all executory contracts and unexpired leases that the Potential Bidder seeks to take assignment of.

A Potential Bidder shall accompany its bid with each of the following: (a) written evidence of available cash, a commitment for financing or ability to obtain a satisfactory commitment if selected as the Successful Bidder, or such other evidence of ability to consummate the sale of the Acquired Assets as the Debtors may request; (b) a copy of a board resolution or similar document demonstrating the authority of the Potential Bidder to make a binding and irrevocable bid on the terms proposed; and (c) any pertinent factual information regarding the Potential Bidder's operations that would assist the Debtors in their analysis of issues arising with respect to any applicable antitrust laws, governmental regulatory approvals, national security laws, foreign investment laws, or other aspects of the bid and with respect to any conditions contained in the bid.

The Debtors will only consider a bid received from a Potential Bidder if it meets the requirements set forth above (with such variations as the Debtors shall permit in accordance with the terms of the Bidding Procedures Order and these Bidding Procedures), and shall constitute a "Qualified Bid" only if the Debtors believe in their discretion, after consulting with the Consultation Parties, that such bid would be consummated if selected as the Successful Bid.

Each Potential Bidder that the Debtors determine to have submitted a Qualified Bid will be considered a "***Qualified Bidder***." For purposes hereof, the Stalking Horse Bidder is a Qualified Bidder, and the Stalking Horse Purchase Agreement executed by the Stalking Horse Bidder is a Qualified Bid. A Qualified Bid will be valued by the Debtors based upon factors such as: (a) the purported amount of the Qualified Bid, including any benefit to the Debtors' bankruptcy estates from any assumption of liabilities of the Debtors; (b) the fair value to be provided to the Debtors under the Qualified Bid; (c) the length of time expected to close the proposed purchase of the Acquired Assets; (d) the ability of the Potential Bidder to obtain all necessary antitrust, governmental, national security, foreign investment, or other regulatory approvals for the proposed purchase of the Acquired Assets; and (e) any other factors the Debtors may deem relevant. Within one (1) calendar day after the Debtors determine that a bid is a Qualified Bid, the Debtors shall distribute a copy of such bid to counsel to the Stalking Horse Bidder, counsel to the DIP Lenders, counsel to the Committee, and counsel to the Equity Committee and any other Qualified Bidder by e-mail, hand delivery, or overnight courier. The Debtors may reject any bid if, among other things, the Debtors determine, after consultation with the Consultation Parties, such bid is on terms that are in their totality materially more burdensome, less favorable or more conditional than the terms of the Stalking Horse Purchase Agreement.

Any bid rejected pursuant to this Section VIII shall not be deemed to be a Qualified Bid. Only Qualified Bidders that have submitted Qualified Bids will be invited to and be eligible to participate in the Auction.

IX.     **The Auction**

If there is timely delivered one or more Qualified Bids (other than the bid of the Stalking Horse Bidder), the Debtors will hold the Auction on June 16, 2015, commencing at 10:00 a.m. (prevailing Eastern Time) at the offices of Akin Gump Strauss Hauer & Feld LLP, One Bryant Park, New York, NY 10036, or at such other location as the Debtors may hereafter designate (with notice of such alternate location given to all Qualified Bidders under the Bidding Procedures and the Consultation Parties, filed with the Bankruptcy Court and posted to the website for the Court-appointed claims and noticing agent for the Debtors' chapter 11 cases, Prime Clerk LLC, https://cases.primeclerk.com/alliednevadagold/), for consideration of the Qualified Bids, each as may be increased at such Auction. Bidding will start at the amount of the highest Qualified Bid and will continue with minimum bid increments of $100,000, subject to the right of the Stalking Horse Bidder to credit the Break-Up Fee and Expense Reimbursement to its bid at each round of bidding. The Auction shall be conducted in accordance with the following procedures:

(a)     Only the Debtors and their representatives, proper representatives of the Consultation Parties, the Stalking Horse Bidder and its representatives, the United States Trustee and its representatives, any other Qualified Bidder that has timely submitted a Qualified Bid, and any creditor in the Debtors' chapter 11 cases shall, upon two days' advance written notice to the Debtors, be permitted to attend the Auction in person, and only the Stalking Horse Bidder and other Qualified Bidders shall be entitled to make any Subsequent Bids (as defined below) at the Auction.

(b) Each Qualified Bidder shall be required to confirm that it has not engaged in any impermissible collusion, including as set forth in Section V above and Section IX(g) below, with respect to the bidding on or the sale by the Selling Debtors of the Acquired Assets.

(c) At least one (1) Business Day (as defined in the Stalking Horse Purchase Agreement) prior to the Auction, each Qualified Bidder who has timely submitted a Qualified Bid must inform the Debtors whether it intends to attend the Auction; *provided, however*, that if a Qualified Bidder elects not to attend the Auction, such Qualified Bidder's Qualified Bid shall nevertheless remain fully enforceable against such Qualified Bidder until the date of the selection of the Successful Bidder and any Back-Up Bidder (each as defined below). Prior to the commencement of the Auction, the Debtors shall provide notice to each Qualified Bidder of (i) the Qualified Bid that the Debtors believe, in their reasonable business judgment, after consultation with the Consultation Parties, is the highest and best offer for the Acquired Assets (the "***Starting Bid***") and (ii) the identities of each other Qualified Bidder that has informed the Debtors of its intent to participate in the Auction.

(d) All Qualified Bidders who have timely submitted Qualified Bids will be entitled to be present for all Subsequent Bids at the Auction with all material terms of each Subsequent Bid being fully disclosed to all other bidders throughout the entire Auction; *provided, however*, that all Qualified Bidders wishing to attend the Auction must have at least one individual representative with full authority to bind such Qualified Bidder attending the Auction in person. All proceedings at the Auction shall be conducted before and transcribed by a court stenographer.

(e) After consultation with the Stalking Horse Bidder and the Consultation Parties, the Debtors, in their discretion, may employ and announce at the Auction additional procedural rules that are reasonable under the circumstances for conducting the Auction; *provided, however*, that such additional rules are (i) not inconsistent with these Bidding Procedures, the Bankruptcy Code, or any order of the Bankruptcy Court or order of any other applicable court entered in connection herewith and (ii) disclosed to each Qualified Bidder at the Auction.

(f) The Debtors reserve their right, after consultation with the Consultation Parties, to make one or more adjournments of the Auction to, among other things: (i) facilitate discussions between the Debtors and the Qualified Bidders, (ii) allow individual Qualified Bidders to determine how they wish to proceed, (iii) consider and determine the current highest and best Subsequent Bid at any given time during the Auction, (iv) afford Qualified Bidders the opportunity to provide the Debtors with such additional evidence as the Debtors, in their reasonable business judgment, may require that the Qualified Bidder (other than the Stalking Horse Bidder) has sufficient internal resources, or has received sufficient non-contingent debt and/or equity funding commitments to consummate the proposed transaction at the prevailing Subsequent Bid amount.

(g) No Qualified Bidder shall consult with any other Qualified Bidder prior to the conclusion of the Auction, or submit at any time a "joint bid" with any other Qualified Bidder, without the express consent of the Debtors.

(h) Bidding at the Auction will begin with the Starting Bid and continue, in one or more rounds of bidding, so long as during each round at least one bid is submitted by a Qualified Bidder that (i) improves upon such Qualified Bidder's immediately prior Qualified Bid (each a "*Subsequent Bid*") and (ii) the Debtors determine, after consulting with the Consultation Parties, is (a) for the first round, a higher and better offer than the Starting Bid, and (b) for subsequent rounds, a higher and better offer than the Leading Bid (as defined below). Each Subsequent Bid at the Auction shall provide net value to the Debtors' estates of at least U.S. $100,000 over the Starting Bid or the Leading Bid (as defined below), as the case may be, with respect to the Acquired Assets. After the first round of bidding and between each subsequent round of bidding, the Debtors shall announce the bid that they believe to be the highest and best offer (each a "*Leading Bid*"). A round of bidding will conclude after each participating Qualified Bidder has had the opportunity to submit a Subsequent Bid with full knowledge of the Leading Bid. Except as specifically set forth herein, for the purpose of evaluating the value of the consideration provided by any Subsequent Bid (including any Subsequent Bid by the Stalking Horse Bidder), the Debtors will, at each round of bidding, give effect to the Break-Up Fee and the Expense Reimbursement that may be payable to the Stalking Horse Bidder under the Stalking Horse Purchase Agreement and take into account any additional liabilities to be assumed by a Qualified Bidder and any additional costs which may be imposed on the Debtors by such Qualified Bid in the Debtors' discretion.

## X.   Credit Bidding

No party shall be permitted or entitled to credit bid any obligation or alleged obligation of the Debtors or any affiliate or subsidiary of the Debtors.

## XI.   The Successful Bid

Immediately at the conclusion of the Auction, the Debtors shall (a) determine, consistent with the Bidding Procedures and after consultation with the Consultation Parties, which bid constitutes the highest and best bid (such bid, the "*Successful Bid*") and (b) communicate to the Stalking Horse Bidder and the other Qualified Bidders the identity of the Successful Bidder and the details of the Successful Bid. At such time, the Debtors, in their discretion, shall also determine, after consultation with the Consultation Parties, which bid constitutes the second-highest and best bid, and may, subject to the terms hereof, deem such second-highest and best bid a back-up bid (such bid, the "*Back-Up Bid*" and the party submitting the Back-Up Bid, the "*Back-Up Bidder*") and communicate to the Stalking Horse Bidder and other Qualified Bidders the identity of the Back-Up Bidder and the details of the Back-Up Bid. Within one (1) Business Day of determining the Successful Bid, the Debtors shall file on the Bankruptcy Court's public docket a notice disclosing the identity of the Successful Bidder and the identity of the Back-Up Bidder if any (the "*Successful Bidder Notice*"). The Stalking Horse Bidder shall only serve as

the Back-Up Bidder with the consent of the Stalking Horse Bidder in its sole and absolute discretion; *provided, however,* that if the Stalking Horse Bidder submits a Subsequent Bid for the Acquired Assets, the Debtors may deem such Subsequent Bid the Back-Up Bid and the Stalking Horse Bidder the Back-Up Bidder; *provided, further, however,* that the Stalking Horse Bidder reserves the right to structure any Subsequent Bid to contain such terms or conditions as the Stalking Horse Bidder deems appropriate, and the Debtors reserve the right to evaluate such bid in accordance with Section IX(h) of these Bidding Procedures.

If no Qualified Bids are received for the Acquired Assets other than the Stalking Horse Purchase Agreement, then the Stalking Horse Purchase Agreement shall be designated as the Successful Bid, there shall be no Auction, and the Debtors shall seek approval of the sale of the Acquired Assets to the Stalking Horse Bidder in accordance with the Stalking Horse Purchase Agreement at the Sale Hearing. The bidder making the Successful Bid is referred to as the "*Successful Bidder.*" The determination of the Successful Bid and the Back-Up Bid by the Debtors at the conclusion of the Auction shall be final, subject to approval by the Bankruptcy Court. If the Successful Bid is terminated or fails to close within the time period specified in the Successful Bid, the Selling Debtors shall be authorized, but are not required, to consummate the Sale Transaction with the Back-Up Bidder without further order of the Bankruptcy Court. The Back-Up Bid shall remain open until the earlier of (x) the first Business Day following the consummation of the Sale Transaction and (y) the ninetieth (90th) calendar day after entry of the Sale Order; *provided, however,* that if the Stalking Horse Bidder consents to serve as the Back-Up Bidder with respect to the Stalking Horse Purchase Agreement, the terms of the Stalking Horse Purchase Agreement shall control the time period during which the Back-Up Bid will remain open. The Debtors shall be deemed to have accepted a Qualified Bid only when (i) such bid is declared to be the Successful Bid at the Auction; (ii) definitive documentation has been executed in respect thereof; and (iii) the Bankruptcy Court has entered an order approving such Successful Bid; *provided, however,* that under no circumstances shall the Debtors consider any bid made after the conclusion of the Auction, unless otherwise determined by the Bankruptcy Court.

EACH QUALIFIED BID SUBMITTED (OTHER THAN THE STALKING HORSE PURCHASE AGREEMENT, WHICH MAY BE TERMINATED IN ACCORDANCE WITH ITS TERMS) SHALL CONSTITUTE AN IRREVOCABLE OFFER AND BE BINDING UPON THE APPLICABLE QUALIFIED BIDDER FROM THE TIME THE BID IS SUBMITTED UNTIL THE ENTRY OF THE SALE ORDER. THE BACK-UP BID SHALL BE IRREVOCABLE AND BINDING UPON THE BACK-UP BIDDER UNTIL THE EARLIER OF ONE (1) BUSINESS DAY AFTER THE CLOSING OF THE SALE OF THE ACQUIRED ASSETS OR NINETY (90) DAYS AFTER THE SALE ORDER IS ENTERED. ALL QUALIFIED BIDDERS AT THE AUCTION SHALL BE DEEMED TO HAVE CONSENTED TO THE JURISDICTION OF THE BANKRUPTCY COURT AND WAIVED ANY RIGHT TO A JURY TRIAL IN CONNECTION WITH ANY DISPUTES RELATING TO THE AUCTION AND THE CONSTRUCTION AND ENFORCEMENT OF ANY SALE TRANSACTION DOCUMENTS.

## XII.  The Sale Hearing

The Successful Bid for the Acquired Assets will be presented to the Bankruptcy Court for approval at the Sale Hearing. If no other Qualified Bid is received by the Debtors and the Stalking Horse Bidder's original Stalking Horse Purchase Agreement is the Successful Bid, then the Debtors will seek entry of an order at the Sale Hearing authorizing and approving the Sale Transaction (the "*Sale Order*"), including the sale of the Acquired Assets to the Stalking Horse Bidder, pursuant to the terms and conditions of the Stalking Horse Purchase Agreement. If a different bid is the Successful Bid, then the Debtors anticipate that they will seek entry of an order, modified as necessary to reflect the terms of the Successful Bid, authorizing and approving the sale of the Acquired Assets to the Successful Bidder. Unless the Bankruptcy Court orders otherwise, the Sale Hearing shall be an evidentiary hearing on all matters relating to the proposed sale, and parties shall be prepared to present their evidence in support of or in opposition to the proposed sale at the Sale Hearing; *provided, however*, that issues relating to the assumption and assignment of executory contracts and unexpired leases may be addressed at one or more separate hearings before the Bankruptcy Court.

XIII. **"As Is Where Is"**

The Sale Transaction shall be on an "as is, where is" basis and without indemnification or representations or warranties of any kind, nature or description by the Debtors, their agents, or their estates, except for representations and warranties expressly set forth in the purchase agreement corresponding to the Successful Bid (none of which shall survive the closing of the Sale). Except as otherwise provided in the Successful Bid or such other bid which may ultimately be consummated, and subject to the Sale Order, all of the Selling Debtors' right, title and interest in and to the Acquired Assets shall be sold free and clear of all liens, claims (as such term is defined by section 101(5) of the Bankruptcy Code), encumbrances, rights, remedies, restrictions, interests, liabilities, leasehold interests, and contractual commitments of any kind or nature whatsoever, whether arising before or after the Petition Date, whether at law or in equity, including, without limitation, all rights or claims based on any successor or transferee liability, all environmental claims, all change in control provisions, all rights to object or consent to the effectiveness of the transfer of the Acquired Assets, all as more specifically set forth and defined in the Motion and the proposed order approving the Sale Transaction (collectively, the "*Claims*"), and as set forth in the Stalking Horse Purchase Agreement and the Sale Order, with such Claims to attach to the net proceeds of the sale with the same validity and priority as such Claims applied against the Acquired Assets. The Stalking Horse Bidder and each Qualified Bidder shall be deemed to acknowledge and represent that it had an opportunity to conduct any and all due diligence regarding the Acquired Assets prior to making its offer, that it has relied solely on its own independent review, investigation, and/or inspection of any documents and/or the Acquired Assets in making its Qualified Bid, and that it did not rely on any written or oral statements, representations, promises, warranties, or guaranties (or omissions from any thereof) whatsoever, whether express, implied, by operation of law or otherwise regarding the Acquired Assets, or the accuracy or completeness of any information provided in connection therewith or the Auction except as expressly stated in these Bidding Procedures, and (a) as to the Stalking Horse Bidder, the terms of the sale of the Acquired Assets set forth in the Stalking Horse Purchase Agreement, or (b) as to any other Successful Bidder, the terms of the sale of the Acquired Assets set forth in the applicable purchase agreement. Notwithstanding the foregoing, the Debtors reserve the right to contest the validity, nature, extent, or priority of and/or seek to set aside or avoid any and all Claims under applicable law.

## XIV. Return of Deposits

The Deposit submitted by the Back-Up Bidder (other than the Stalking Horse Bidder if (i) the Stalking Horse Bidder submits a Subsequent Bid that is selected as the Back-Up Bid or (ii) consents to serve as the Back-Up Bidder) will be held by the Debtors until forty-eight (48) hours after the Back-Up Bid has been terminated in accordance with the Bidding Procedures. As to all other bidders (except for the Successful Bidder and the Stalking Horse Bidder whose Deposit will be returned in accordance with the terms of the Stalking Horse Purchase Agreement), Deposits will be returned promptly after conclusion of the Sale Hearing. Other than with respect to the Deposit of the Stalking Horse Bidder, which shall be governed solely by the terms of the Stalking Horse Purchase Agreement, if the Successful Bidder or the Back-Up Bidder fails to consummate an approved sale because of a breach or failure to perform on the part of the Successful Bidder or the Back-Up Bidder, the Debtors shall be entitled to retain the Deposit in partial satisfaction of any damages resulting from the breach or failure to perform by the Successful Bidder or the Back-Up Bidder, without prejudice to any other rights the Debtors may have. The Debtors may retain and credit the Deposit of the Successful Bidder or the Back-Up Bidder, as applicable, toward the purchase price on the closing of the sale of the Acquired Assets.

## XV. Reservation of Rights

Except as otherwise provided in the Bidding Procedures Order, the Debtors reserve the right, after consultation with the Consultation Parties, to: (a) determine which Potential Bidders are Qualified Bidders; (b) determine which bids are Qualified Bids; (c) determine which Qualified Bid is the highest and best offer for the Acquired Assets and which is the second-highest and best offer; (d) reject any bid that is (i) inadequate or insufficient, (ii) not in conformity with the requirements of the Bidding Procedures or the requirements of the Bankruptcy Code, or (iii) contrary to the best interests of the Debtors and their estates; (e) waive terms and conditions set forth herein with respect to all Potential Bidders (after consultation with the Stalking Horse Bidder); (f) impose additional terms and conditions with respect to all Potential Bidders (after consultation with the Stalking Horse Bidder); (g) extend the deadlines set forth herein (after consultation with the Stalking Horse Bidder); (h) adjourn or cancel the Auction and/or Sale Hearing without further notice; and (i) modify the Bidding Procedures as they may determine to be in the best interests of their estates or to withdraw the Motion at any time with or without prejudice; *provided, however*, that notwithstanding the foregoing, without the consent of the Stalking Horse Bidder, which consent shall not be unreasonably withheld, the Debtors may not (1) withdraw the Motion, (2) adjourn or cancel the Sale Hearing, (3) waive any conditions to a bidder being a Qualified Bidder or a bid being a Qualified Bid as set forth in the Bidding Procedures; (4) remove any of the Acquired Assets from the Auction; (5) extend the time period within which the Debtors are required to file the Successful Bidder Notice; or (6) modify the Bidding Procedures' requirements (A) set forth in Section VIII(a) herein, (B) to change the amount of the Deposit, (C) to waive or modify any of the provisions in the Credit Bidding section of the Bidding Procedures, or (D) to impair or modify the Stalking Horse Bidder's rights and obligations under the Bidding Procedures or the Stalking Horse Purchase Agreement, including, without limitation, the Stalking Horse Bidder's rights with respect to the timing of the Auction and the Sale Hearing or the Stalking Horse Bidder's right to receive a

"credit" in the amount of its Break-Up Fee and Expense Reimbursement toward any Subsequent Bid at the Auction.

*Remainder of Page Intentionally Left Blank*